22 A.3d 189

**CROZER CHESTER MEDICAL CENTER, Appellant**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKERS' COMPENSATION, HEALTH CARE SERVICES REVIEW DIVISION, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Re–Submitted Dec. 21, 2010.

Decided May 25, 2011.

460

Howard R. Maniloff, Tabas & Rosen, P.C., Philadelphia, for Crozer Chester Medical Center.

George E. Martin III, Martin, Banks, Pond, Lehocky & Wilson, for Appellant Amicus Curiae, PA Association of Justice.

Thomas Paul Howell, PA Department of Labor & Industry, Thomas J. Kuzma, Jane Pomerantz, PA Department of Labor & Industry, Harrisburg, for Department of Labor and Industry, Bureau of Worker's Compensation.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.*

In this direct appeal, we decide whether the Commonwealth Court should have compelled appellee Department of Labor and Industry (the "Department") *via* a writ of *mandamus* to reach the merits of a fee review petition filed by appellant Crozer Chester Medical Center ("Crozer") pursuant to Section 306(f.1)(5) of the Workers' Compensation Act ("Act"), 77 P.S. § 531(5). The Commonwealth Court declined to issue the writ, concluding that the Department correctly dismissed as premature Crozer's application for fee review. The issue, as phrased by Crozer, is:

* This case was re-assigned to this author.

Whether the lower court erred in granting the [Department]'s demurrer even though: (a) the complaint [in *mandamus* ] averred that, in a notice of compensation payable, [a claimant]'s workers' compensation insurer admitted that [the claimant]'s injury was compensable and that the insurer was liable therefor; and (b) the [c]omplaint [in mandamus] did not aver that the insurer disputed liability or compensability.

Crozer's Brief at 4. For the reasons that follow, we affirm.

On April 28, 2008, Crozer filed with the Commonwealth Court a petition for review in *mandamus*,[1] seeking to compel the Department to decide the merits of a fee review application rejected by the Department as premature. According to the *mandamus* petition, in December 2005, claimant William Radel suffered a work-related injury while lifting a bundle of rebar for employer Re–Steel Supply Company, Inc. In January 2006, employer issued a medical-only notice of compensation payable ("NCP"), voluntarily accepting liability for an injury described as a hernia. Radel underwent surgery to repair an umbilical hernia at Crozer in February 2006. On March 20, 2007, Crozer sent records and billed employer's insurer, Zurich North American Insurance Company ("Zurich"), for the treatment it provided Radel. Zurich did not pay the medical care provider's bill. *See* Crozer's Petition at ¶¶ 5–9 & exh. A (paragraph 9 states: "In violation of 34 Pa.Code § 127.208, within thirty-three (33) days after said submission,[2] Zurich neither paid [Crozer]'s bill nor did it issue a denial of payment.[3] ") (footnotes added).

**1.** Crozer's initial filing is captioned *"Mandamus* Complaint." But, pursuant to Rule of Appellate Procedure 1512, the filing should have been styled a petition for review in *mandamus.* Pa.R.A.P. 1512(c) & note. We use the correct designation.

**2.** The Act provides that the insurer must make payment to the medical care provider within thirty (30) days of the provider's submission of bills and records. 77 P.S. § 531(5). Regulation 127.208 provides that "[f]or purposes of computing the timeliness of payments, the insurer shall be deemed to have received a bill and report 3 days after mailing by the provider," *i.e.,* thirty-three days after submission. 34 Pa.Code § 127.208.

**3.** Although Section 306(f.1)(1) does not require written notice to the provider explaining the denial of payment, the Department's regula-

According to the *mandamus* petition, Crozer filed an application for fee review on May 23, 2007. In March 2008, the Department rejected and returned the application as premature, because it found that there was "an outstanding issue of liability/compensability for the alleged injury." The Department also denied Crozer's request for a *de novo* administrative hearing. Consequently, the medical care provider filed its *mandamus* petition with the Commonwealth Court. *See id.* at ¶¶ 4–5, 7–11, 13 & exh. C.

In June 2008, the Department filed preliminary objections requesting dismissal of Crozer's petition on several grounds, including that *mandamus* was not an appropriate remedy here because the medical care provider failed to establish a clear right to relief, and the medical care provider sought to compel an exercise of discretion rather than a ministerial act. Crozer responded with its own preliminary objections, asserting that the Department was seeking demurrer relief on the basis of documents supplementing the petition for review, contrary to the prohibition against speaking demurrers. Crozer's Objections at 2 (citing *Hall v. Goodman Co.*, 310 Pa.Super. 465, 456 A.2d 1029, 1035 (1983)). Specifically, Crozer objected to the Court's consideration of a letter and two faxes from Zurich's claims adjuster and to a February 2006 notice from the Department, which informed Crozer that Radel's claim had been denied. Department's Objections at exh. A. Following a hearing, the Commonwealth Court sustained Crozer's preliminary objections and stated that it would not consider any exhibits attached to the Department's filing. But, the Court also sustained the Department's substantive objections and dismissed Crozer's *mandamus* petition. Crozer filed a direct appeal to this Court. *See* 42 Pa.C.S. § 723(a).[4]

tions impose that obligation. *See* 77 P.S. § 531(5); 34 Pa.Code § 127.209(a) ("If payment of a bill is denied entirely, insurers shall provide a written explanation for the denial."). No claims are before us regarding the legal effect of any failure by Zurich to notify Crozer of its decision in writing, pursuant to Regulation 127.209(a).

4. This Court, upon dispositional review of the parties' briefs, *see* I.O.P. § 3(A)(3), ordered additional briefing on the issue of whether the NCP constitutes a dispositive admission of liability and what effect the

Crozer claims on appeal that its *mandamus* action was improperly dismissed because the averments in its petition established the Department's mandatory duty to issue (and Crozer's clear legal right to receive) a determination on the merits of the fee review application. Crozer argues that Zurich issued a medical-only NCP, which had not been modified or terminated at the time of the medical treatment and, thus, pursuant to the Act, the NCP constituted a voluntary and binding admission of liability for Radel's umbilical hernia. According to Crozer, because Zurich is precluded from terminating benefits unilaterally or retroactively, the existence of an "open" NCP at the time of Radel's treatment is an "unequivocal admission" that Zurich must pay Crozer. Thus, the medical care provider disputes the Department's conclusion that an unresolved issue of liability remained at the time of the fee review application. In view of the "open" NCP, Crozer offers, the Department was not faced with making any legal determination of Zurich's liability as part of its fee review. Crozer therefore requests that we reverse the Commonwealth Court's decision and order the Department to resolve the merits of the fee review application.

The Department responds that Crozer improperly sought *mandamus* to compel exercise of the Department's discretion in a particular manner. Specifically, the Department argues that Zurich denied liability, but that Crozer nonetheless sought to force the Department to decide that the "open" NCP estopped Zurich from denying liability. The Depart-

decisions in *Beissel v. W.C.A.B. (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), *Barna v. W.C.A.B. (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), *Mahon v. W.C.A.B. (Expert Window Cleaning)*, 835 A.2d 420 (Pa.Cmwlth.2003), and Section 406.1(d) of the Act, 77 P.S. 717.1(d), have on the Department's obligation to decide Crozer's fee review application on the merits. The parties complied. In their supplemental briefs, both parties stated that the issue subject to supplemental briefing is collateral to their dispute and that the caselaw cited is inapposite. *See* Crozer's Supp. Brief at 4, 6; Department's Supp. Brief at 2. Upon review, we agree. Although this may not always be the case, it appears that here the parties are correct in attempting to refocus the disputed issue before the Court. We note, moreover, that the supplemental briefs assisted the Court in understanding how the Department's fee review process operates.

ment notes that these decisions are not as simple as Crozer believes. According to the Department, deciding whether the NCP is "open," whether Zurich's denial was proper, and whether Crozer was entitled to payment under the circumstances, "far exceeds the jurisdiction and administrative capabilities of the fee review authorities." Department's Brief at 7. The Department further notes that, although ill-equipped to do so, the Department's hearing officer would be required to determine the credibility of insurers and providers, inquire into whether the NCP included the treatment billed by the provider, resolve whether the NCP was rescinded, accurate, or authentic, and determine issues of estoppel. The Department maintains that, in view of these inherent practical challenges, the regulatory prohibition against litigating liability within the context of the fee review process is sensible. The Department argues that issues of liability, even where an "open" NCP exists, are better litigated before workers' compensation judges, pursuant to the Act and relevant regulations. Crozer, the Department concludes, failed to establish a clear legal right to a determination on the merits of its fee review application and, therefore, the Commonwealth Court properly dismissed Crozer's action.

In dismissing Crozer's petition for *mandamus,* the Commonwealth Court explained that Crozer's petition (paragraph 11 and exhibit C) indicated that Zurich was disputing liability for the injury. According to the court, Crozer essentially argued that "when an insurer's denial of liability appears to violate the [Act], the Department should be required to make a determination." *Crozer Chester Med. Ctr. v. Dep't of Labor & Indus.,* 955 A.2d 1037, 1042 (Pa.Cmwlth.2008). Specifically, in the court's view, Crozer maintained that Zurich's denial violated the Act in light of the "open" NCP. The court rejected Crozer's *mandamus* argument, concluding that to grant Crozer relief would entail requiring the Department to exercise legal judgment and evaluate the credibility of witnesses, the legal effect of documents and of other evidence. Thus, the panel recognized that Crozer "[was] not attempting to enforce a right which ha[d] been established beyond peradventure, but

[was] seeking to have [the court] direct the Department to determine the issue of liability in [Crozer]'s favor." *Id.* The Commonwealth Court therefore held that Crozer had failed to plead a legally cognizable claim in *mandamus.* *Id.*

Preliminarily, it is important to recognize that the claim before us involves a request for *mandamus* relief. The controlling question is whether the factual averments in Crozer's petition for review are legally sufficient to state a cause of action for *mandamus* in light of the relevant provisions of the Act and the regulations of the Department. A *mandamus* action lies only "to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law. . . . While *mandamus* will not ordinarily lie to compel a series of particular acts or conduct or to compel the performance of a particular discretionary act, it is available to direct that discretion be exercised." *Delaware River Port Auth. v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351, 1355–56 (1985) (internal citations omitted). The affected governmental entity may test the legal sufficiency of a *mandamus* complaint by filing preliminary objections in the nature of a demurrer. *See* Pa.R.C.P. No. 1028(a)(4). A demurrer is properly sustained if it is clear and free from doubt that the facts pleaded in the complaint are legally insufficient to establish a right to relief. *Werner v. Zazyczny,* 545 Pa. 570, 681 A.2d 1331, 1335 (1996).

For the purpose of determining whether a lower court properly sustained a demurrer, this Court must regard as true all well-pleaded material facts set forth in the *mandamus* petition and all reasonable inferences that may be drawn from those facts. *Id.* But, this Court "need not accept as true conclusions of law, unwarranted inferences, allegations, or expressions of opinion." *Bayada Nurses, Inc. v. Commonwealth,* 8 A.3d 866, 884 (Pa.2010). Our review of the lower court's decision is *de novo* and plenary. *Mazur v. Trinity Area Sch. Dist.,* 599 Pa. 232, 961 A.2d 96, 101 (2008).

Here, the Commonwealth Court sustained the preliminary objections of the governmental entity, the Department, holding that Crozer's petition failed to plead a legally cognizable claim in *mandamus*. The court found that the Department acted properly in dismissing Crozer's fee review application as premature pursuant to the Department's Regulation 127.255(1). In its totality, Regulation 127.255 provides that:

The Bureau will return applications for fee review prematurely filed by providers when one of the following exists:

(1) The insurer denies liability for the alleged work injury.[5]

(2) The insurer has filed a request for utilization review of the treatment under Subchapter C (relating to medical treatment review).

(3) The 30–day period allowed for payment has not yet elapsed, as computed under § 127.208 (relating to time for payment of medical bills).

34 Pa.Code § 127.255 (premature applications for fee review). We review the pertinent provisions of the Act to determine whether Crozer's application was indeed premature and properly dismissed.

Pursuant to Section 306(f.1) of the Act, the employer of a qualified injured employee, or claimant, "shall" pay for the reasonable surgical and medical services provided by physicians or other health care providers as and when needed. 77 P.S. § 531(1)(i). The Act shields a claimant with a compensable work injury from liability to a medical care provider for

5. We recognize that the language of Regulation 127.255(1) appears to contain a latent ambiguity insofar as it refers to the insurer denying "liability for the alleged work injury." *See* 34 Pa.Code § 127.255. Indeed, Section 306(f.1)(5) of the Act, which the regulation addresses, indicates that it is sufficient if the insurer denies liability for a "particular treatment," as explained further *infra*. *See* 77 P.S. § 531(5); 77 P.S. § 991(a)(v) (Department to promulgate regulations "reasonably calculated to … explain and enforce the provisions of th[e] [A]ct"). In this case, the Department is interpreting the Regulation consistently with the Act, as required, and there is no issue before us regarding the overall validity of Regulation 127.255(1) in light of the latent ambiguity. *See* 77 P.S. § 991(a) (Department to promulgate regulations "consistent with th[e] [A]ct").

the cost of treatment, and places the onus on the employer, acting independently or through its insurer, to make timely payments to medical care providers for such costs. 77 P.S. § 531(5), (7).[6] Additionally, Section 306(f.1)(5) protects the financial interests of both claimants and medical care providers by mandating payment for any undisputed treatment in a timely manner. 77 P.S. § 531(5). Indeed, insurers are required to pay interest on untimely payments to the medical care provider, and may be subject to penalties to the claimant for unreasonable delays in paying compensation. *See* 77 P.S. § 991(d) (penalties); 34 Pa.Code § 127.210 (interest on untimely payments); *Hough v. W.C.A.B. (AC & T Companies),* 928 A.2d 1173, 1179–81 (Pa.Cmwlth.2007), *appeal denied,* 596 Pa. 710, 940 A.2d 367 (2007) ("Section 306(f.1)(5) ... does not require that [p]rovider seek fee review before [c]laimant may proceed on a penalty petition alleging untimely payment of medical bills").

The Act also foresees the most likely scenarios giving rise to disputes: (1) between insurers and claimants over liability, *i.e.,* whether compensation is due for medical care or for a particular treatment, and (2) between insurers and medical care providers over the amount billed or the timeliness of payment for a covered treatment.

Notably, where the insurer issues an NCP, the insurer may still contest liability for medical care or for a particular treatment on several grounds. For example, an insurer may seek to modify, suspend, or terminate the NCP, including a claimant's medical benefits, if the incapacity of a claimant has decreased, or temporarily or finally terminated. 77 P.S. §§ 732, 772; *see, e.g., Henry v. W.C.A.B. (Keystone Foundry),* 816 A.2d 348, 349, 354 (Pa.Cmwlth.2003). If the NCP and the insurer's accompanying liability for medical compensation has not been modified or terminated, the insurer may nonetheless question liability for a particular treatment. 77 P.S. § 531(5). A common scenario is one in which the insurer questions the "reasonableness or necessity" of a treatment offered for an

---

**6.** Because the employer here acted through its insurer, Zurich, we analyze the relevant provisions as they apply to the insurer.

accepted work-related injury, *i.e.,* whether the treatment is appropriate for the injury. *See, e.g., Gallie v. W.C.A.B. (Fichtel & Sachs Indus.),* 580 Pa. 122, 859 A.2d 1286, 1288 (2004). In that event, immediate payment is not required, but the insurer must make a timely request for treatment utilization review. 77 P.S. § 531(5), (6). In other instances, the insurer may also question liability for a particular treatment because: the billed treatment is not related to the accepted work-related injury as described by the NCP, the NCP is fraudulent or contains a material misrepresentation or error, or the issue of liability for medical costs is subject to an agreement supplementing or replacing the NCP. 77 P.S. § 771 (modification of materially incorrect NCP); *see, e.g., Cinram Mfg., Inc. v. W.C.A.B. (Hill),* 601 Pa. 524, 975 A.2d 577, 582 (2009) ("workers' compensation judge 'may' at any time correct a notice of compensation payable"); *Barna v. WCAB (Jones & Laughlin Steel Corp.),* 513 Pa. 518, 522 A.2d 22, 24 (987) (compensation may be terminated if timely investigation reveals that NCP is materially incorrect); *Waugh v. W.C.A.B. (Blue Grass Steel),* 558 Pa. 400, 737 A.2d 733, 737–38 (1999) (claimant supplied documents containing material misrepresentation regarding residency to obtain NCP); *Gregory v. W.C.A.B. (Narvon Builders),* 926 A.2d 564, 565 (Pa.Cmwlth. 2007) (compromise and release agreement replaced NCP). In cases in which liability for a particular treatment is at issue, the claimant, not the medical provider, must pursue compensation before a workers' compensation judge in the regular course. *See* 77 P.S. § 531(6)(iv) (utilization review); 77 P.S. § 710 (liability for compensation generally).

But, under the Act, if an insurer accepts that compensation is due for a particular treatment, a medical care provider may file an application for fee review to dispute the "amount or timeliness" of the payment. 77 P.S. § 531(5); *Catholic Health Initiatives v. Heath Family Chiropractic,* 720 A.2d 509, 511 (Pa.Cmwlth.1998) (commencement of fee review process "presupposes" that liability has been established). For example, an application for fee review is appropriate if payment to the provider was partial or late. *See, e.g., Enterprise Rent–A–Car*

*v. W.C.A.B. (Clabaugh),* 934 A.2d 124, 128 (Pa.Cmwlth.2007), *appeal denied,* 597 Pa. 707, 948 A.2d 805 (2008) (fee review, not utilization review, was appropriate where provider challenged insurer's payment of initial estimate rather than of higher final cost of retrofitting claimant's home). The application for fee review is due "no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment." 77 P.S. § 531(5). The Department may reject the application as premature, 34 Pa.Code § 127.255; otherwise, the Department's hearing officer is required to decide the merits of a fee review application within thirty (30) days of its filing. 34 Pa.Code § 127.256. In the Department's description, which Crozer does not dispute, the fee review process "is administered by nurses who determine whether employers' payments are timely paid or properly calculated under the workers' compensation fee schedule and medical billing protocols. While these personnel are experienced and knowledgeable about the workers' compensation fee schedule, their skills are markedly distinct from [workers' compensation judges], who [as attorneys with a mandatory minimum of five years' workers' compensation law experience] are trained to conduct hearings and make credibility determinations." Department's Supp. Brief at 2–3.

It is apparent that the fee review process has a very narrow scope within the broader legislative and regulatory scheme of compensating claimants for work-related injuries. Understandably, the General Assembly directed that most disputed compensation issues be litigated between claimants and insurers before skilled workers' compensation judges in the first instance, and reserved few narrow issues to be litigated by the medical care provider before a fee review hearing officer. The Department's Regulation 127.255, which fills procedural gaps within the fee review legislative scheme, enforces this understanding by explaining that the Department will reject a medical care provider's application for fee review if the "insurer denies liability for the alleged work injury" or a request for utilization review is pending. 34 Pa.Code § 127.255(1), (2);

*see also* 77 P.S. § 991 (Department to promulgate regulations reasonably calculated to explain and enforce provisions of the Act.).

 In its *mandamus* petition, Crozer pled that Zurich refused to pay its bill for treating Radel, contrary to the Act's mandate. According to Crozer, the Act establishes that an "open" NCP is Zurich's "unequivocal admission" of liability for Radel's December 2005 injury. Crozer concludes that, as a result, the Department should have reached the merits of its fee review application, presumably to order Zurich to pay Crozer's bill. At the center of Crozer's claim is the assumption that the so-called "unequivocal admission" of liability to Radel absolutely establishes Zurich's liability to Crozer for the medical costs of the February 2006 treatment, as well as the settled nature of Crozer's claim, whose merits the Department should have reached. We disagree.

 ██ Initially, it is apparent from Crozer's own averments that Zurich was disputing liability. Paragraph 9 of the *mandamus* petition describes Zurich's refusal to pay Crozer for the February 2006 surgery, which, in light of the Act's mandate that insurers pay "timely for any treatment or portion thereof not in dispute," is essentially a denial of liability for the treatment.[7] This averment, though adverse to Crozer's legal interest, must be accepted as true, on par with all other allegations in the petition. *See Werner*, 681 A.2d at 1335 ("Court must consider as true all the well-pleaded material facts set forth in appellant's [pleading]"). Crozer seeks to overcome Zurich's denial of liability by claiming that an "open" NCP is irrebuttable evidence of liability for the cost of the February 2006 surgery. This is a legal argument, sounding in estoppel, which simply adds another layer to the dispute over liability.

---

7. As noted *supra,* Regulation 127.209 required Zurich to provide Crozer with a written explanation of its denial. 34 Pa.Code § 127.209(a). This notice requirement, however, is distinct from the question of whether an insurer's refusal to pay the entire bill effectively constitutes a denial of liability in the distinct context of the fee review process.

 Even if we were to assume that black letter law deems an "open" NCP to be an "unequivocal admission" of liability, the inquiry into Crozer's allegations cannot stop there. The NCP is an agreement between an employer or an insurer and a claimant regarding liability for the claimant's injury. *See* 77 P.S. § 731 (NCP issued to "employe or his dependent"). But, liability for an injury is distinct from liability for a particular treatment or its cost. The NCP, even if "open" and binding with respect to liability for the injury, is not dispositive as to the medical care provider's claim for reimbursement for the cost of a particular treatment. As a result, here, the so-called "open" NCP does not bar Zurich from disputing liability for payment to Crozer for Radel's February 2006 surgery. *See, e.g., Gallie; Waugh; Gregory, supra.* Thus, the "open" NCP simply cannot be construed as compelling a fee review on the merits if an insurer, rightly or wrongly, refused payment. *See Catholic Health Initiatives,* 720 A.2d at 511; 34 Pa.Code § 127.255.

Moreover, it is apparent from Crozer's *mandamus* petition that the present dispute is not capable of resolution through the Section 306(f.1)(5) fee review process. Fee review is a process for medical care providers to dispute "the amount or timeliness" of an insurer's payment for a particular treatment, which are relatively simple matters. 77 P.S. § 531(5). But, Crozer's petition contains no allegations that the medical fee had not been paid timely or had not been calculated in accordance with the compensation fee schedule or medical billing protocols. *See* 34 Pa.Code §§ 127.208, 127.210 (timeliness provisions); 127.101–127.135, 127.151–127.162, 127.205–127.207 (amount calculation provisions). Crozer is seeking, instead, to establish the broader legal proposition that Zurich's failure to pay was unwarranted and that the Department's fee review personnel were obliged to make that determination.[8] Such a decision is outside the scope of what is designed to be a simple fee review process.

8. Zurich accepted liability via the NCP for Radel's work-related hernia and Crozer repaired an umbilical hernia. Under these circumstances, Zurich's reasons for denying liability are not immediately obvious. The

Ultimately, the Department did not err in construing Zurich's refusal to pay Crozer's bill for Radel's February 2006 surgery to be a denial of liability for the treatment. Thus, the Department did not err in concluding that Crozer's application did not raise either of the two narrow issues appropriate for fee review. Rather, Crozer sought a legal decision from non-qualified personnel within the Department on whether it was entitled to payment at all in view of the so-called "open" NCP. This type of decision is properly viewed as the province of specially qualified workers' compensation judges, to be rendered within the context of claimant-insurer litigation. Crozer's *mandamus* petition seeking to compel a decision on the fee review application was properly rejected by the Department pursuant to the Act and Regulation 127.255(1).

For the foregoing reasons, we hold that Crozer did not have a clear right to a decision of its fee review application on the merits because: (1) the provider alleged that Zurich disputed liability by refusing payment; and (2) the provider challenged the propriety of Zurich's denial rather than the amount or timeliness of payment for a particular treatment. Thus, the allegations in Crozer's petition for review did not state a cause of action in *mandamus*. The Department did not err in applying Section 306(f.1)(5) of the Act and Regulation 127.255, and thereby dismissing as premature the application for fee review filed by appellant Crozer. The Commonwealth Court's decision is affirmed. Jurisdiction is relinquished.

Justices SAYLOR, EAKIN and ORIE MELVIN join the opinion.

Justice BAER files a dissenting opinion in which Justices TODD and McCAFFERY join.

fee review process, however, is not designed to encompass either an inquiry into the insurer's reasons for denying liability or an evaluation of estoppel arguments like Crozer's. Yet, Crozer sought resolution of both issues in the fee review context, as a prerequisite to reaching issues of amount or timeliness of payment, which are within the proper scope of that process.

Justice BAER, dissenting.

I respectfully dissent. I would hold that the "open" and unmodified medical-only notice of compensation payable (NCP) issued by Re–Steel Supply Company (Employer), through its insurer Zurich North American Insurance Company (Insurer), constitutes a binding admission of liability for medical services related to the injury suffered by Claimant, William Radel, during the course of his employment. Accordingly, the medical provider that treated Claimant, Crozer Chester Medical Center (Provider) should be permitted to seek, through *mandamus,* a writ compelling the Department of Labor and Industry to issue a decision on the merits of its fee review petition.

As noted by the Majority, on December 28, 2005, Claimant suffered a work-related injury lifting a bundle of rebar. Two weeks later, Employer, through Insurer, issued a medical-only NCP,[1] in which it voluntarily accepted liability for the injury suffered by Claimant-an umbilical hernia. On February 24, 2006, Provider participated in the surgical repair of the hernia. Shortly thereafter, and under the filed NCP,[2] Provider submitted the requisite medical and billing records to Insurer in order to receive reimbursement for the treatment provided to Claimant incident to this injury.[3] When Insurer failed to

1. When an employer or insurer commences workers' compensation payments without an agreement with the injured employee, such payments are made through a notice of compensation payable (NCP). A "medical-only" NCP indicates that an employer or insurer will only reimburse or pay for medical expenses incurred by the claimant, and not for non-medical losses, such as lost wages. *See* 34 Pa.Code § 121.7(e). The character of the NCP in this case being "medical-only" is not significant for the overarching legal issues presented in this appeal.

2. I say "under the filed NCP" because, without the NCP, Provider would not have known to send the medical bill to Insurer.

3. Pursuant to Section 531 of the Act, 77 P.S. § 531(1),

The employer shall provide payment [ . . . ] for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed.

Medical providers seeking reimbursement for services provided in the course of treating an employment-related injury must submit itemized

submit payment to Provider within thirty-three days, as required by 34 Pa.Code § 127.208(a) and (b),[4] Provider filed a fee review application with the Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division (the Department), pursuant to 77 P.S. § 531(5).[5] On March 31, 2008, the Department denied the application without holding an administrative hearing on the basis that the application was premature because of "an outstanding issue of liability/compensability for the alleged injury," notwithstanding Insurer's issuance of the NCP.[6]

Provider subsequently filed an action in *mandamus* in the Commonwealth Court's original jurisdiction, seeking a writ ordering the Department to issue an administrative decision

reports of treatment and billing records to both the workers' compensation insurer and the Pennsylvania Department of Labor and Industry, Bureau of Workers' Compensation. 34 Pa.Code §§ 127.201, 127.203.

4. In relevant part, 34 Pa.Code § 127.208 provides,
 (a) Payments for treatment rendered under the act shall be made within 30 days of receipt of the bill and report submitted by the provider.
 (b) For purposes of computing the timeliness of payments, the insurer shall be deemed to have received a bill and report 3 days after mailing by the provider. Payments shall be deemed timely made if mailed on or before the 30th day following receipt of the bill and report.

5. Under the Workers' Compensation Act,
 A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.
 77 P.S. § 531(5).
 Disputes of a provider's bill by an employer or insurer must be made within thirty days of receipt of the bill, in accord with Section 531(6), which provides that such disputes shall be subject to the utilization review process. 77 P.S. § 531(6).

6. Upon receipt of an application for fee review, the Department will conduct an investigation into the application and issue an administrative decision on the merits of the application within thirty days. 34 Pa.Code § 127.256. However, if "the insurer denies liability for the alleged work injury," the Department will deem the application "premature" and decline to decide the issue. 34 Pa.Code § 127.255(1). Apparently, that is what the Department asserts occurred here.

on the merits of the application, pursuant to 34 Pa.Code § 127.256, *supra* note 6. The specific and relevant language from the *mandamus* complaint is as follows:

5. On January 12, 2006, [Employer's] workers' compensation insurer [Insurer], issued a medical only Notice of Compensation Payable in which it voluntarily accepted liability for the umbilical hernia that [Claimant] sustained on December 28, 2005.

6. Upon information and belief, neither [Employer] nor [Insurer] thereafter filed a petition to modify or terminate said Notice of Compensation Payable.

7. On February 24, 2006, [Provider] surgically repaired the umbilical hernia for which [Insurer] accepted liability in its January 12, 2006 Notice of Compensation Payable. [ . . . ].

8. In accordance with 34 Pa.Code §§ 127.201, 127.203, on March 20, 2007, [Provider] submitted [ . . . ] form UB–92, a medical report (LIBC–9) form, and medical records to [Insurer].

9. In violation of 34 Pa.Code § 127.208, within thirty-three (33) days after said submission, [Insurer] neither paid [Provider's] bill nor did it issue a denial of payment.

10. As a result, in accordance with 34 Pa.Code §§ 127.251–127.253, on May 23, 2007, [Provider] filed Application for Medical Fee Review # 149176 with [the Department].

11. On March 31, 2008, [the Department] rejected said application without making an administrative decision on the merits, asserting that the application was premature because "[t]here is an outstanding issue of liability/compensability for the alleged injury." [ . . . ].

12. Since there is an open Notice of Compensation Payable with respect to the specific injury for which [Provider] treated [Claimant], [Insurer] voluntarily accepted liability for [Claimant's] December 28, 2005 injury. Accordingly, [the Department's] assertion that the application is premature within the meaning of 34 Pa.Code § 127.255(a) is incorrect.

\* \* \*

14. Despite the existence of an open Notice of Compensation Payable for the injury to which [Provider] treated [Claimant], [the Department] has denied [Provider] the opportunity to pursue its administrative remedies to enforce [Insurer's] obligation to pay for the medical care that [Provider] rendered to [Claimant].

15. Further, because an open Notice of Compensation Payable exists, [Provider] may be unable to seek payment from [Claimant] or his health insurer.

(Compl.¶¶ 5–12, 14–15).

The Department filed preliminary objections in the nature of a demurrer, claiming that Provider failed to state a cause of action upon which relief could be granted because Provider did not allege (to the Department's satisfaction) in the *mandamus* complaint that no challenge to liability was pending at the time Provider filed the application for fee review, and, thus, it was premature under 34 Pa.Code § 127.255(1) (providing that a medical provider's application is premature, and thus the Department will not issue an administrative decision, when "the insurer denies liability for the alleged work injury," and the issue of liability has not been decided by a WCJ.). The Department further alleged that during its investigation of the application for fee review, as mandated by 34 Pa.Code § 127.256, Insurer had responded thereto with a denial of liability pursuant to Section 127.255, which generally permits an insurer to deny liability for provided medical services and contest a fee review application. Consistent therewith, the Department attached a purported copy of the denial of liability to its preliminary objections. Provider subsequently filed a preliminary objection to the Department's preliminary objections, arguing that the Department improperly attached the denial of liability to its preliminary objections, as the averments contained within its *mandamus* complaint should be taken as true at the preliminary objection stage of litigation.

The Commonwealth Court first agreed with Provider, and sustained its preliminary objection in regard to the Department's attachment of the alleged copy of a denial of liability from Insurer to its preliminary objections. *See Crozer Ches-*

ter Med. Ctr. v. Dep't of Labor & Indus., Bureau of Workers' Comp., Health Care Servs. Review Div., 955 A.2d 1037 (Pa. Cmwlth.2008).[7] Ultimately, however, the court sustained the Department's demurrer. Specifically, the court stated that the language in the complaint averring that Insurer had "voluntarily accepted liability" by issuing the NCP (Compl.¶ 12), was insufficient to establish a clear right of relief, and thus the writ could not issue because Provider failed to state explicitly whether liability was indeed being contested, and whether the Department's fee reviewer would be forced to consider Insurer's denial. Instead, the court concluded that Provider was attempting to litigate the issue of work-relatedness, i.e., liability, in the application for fee review, which is not permitted. Crozer Chester, 955 A.2d at 1042 (citing Catholic Health Initiatives v. Heath Family Chiropractic, 720 A.2d 509, 511 (Pa.Cmwlth.1998) (holding that there is no authority "for a Hearing Officer to decide the issue of liability in a fee review proceeding.")). Thus, in the view of the Commonwealth Court, Provider did not have a clear right to an administrative decision on the merits, and therefore dismissed the mandamus action.

Provider filed a direct appeal with this Court, and we granted oral argument to consider more fully the contentions presented by Provider; specifically, whether the averments in the complaint illustrated a clear legal right to an administrative decision on the fee review petition. In so doing, we further ordered the parties to address what impact, if any, past decisions from this Court and the Commonwealth Court concerning NCP disputes between employees and employers/insurers, as well as a 1993 amendment to the Workers' Compensation Act, have on this appeal.[8]

7. Thus, no "denial of liability" by Insurer is of record in this case.

8. Specifically, we ordered the parties to submit supplemental briefing, focused to the following issue:

In considering whether an issued and unmodified medical-only NCP constitutes an admission of liability, such that the Department of Labor and Industry, Bureau of Workers' Compensation, Compensation Health Care Services Division should render a decision on the merits of a fee review petition, what effect do Beissel v. WCAB (John

The Majority has correctly stated our scope and standard of review in examining the denial of *mandamus* relief and the granting of a demurrer. I emphasize, however, that *mandamus* relief is proper "to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law . . . ." *Delaware River Port Auth. v. Thornburgh*, 493 A.2d 1351, 1355–56 (Pa.1985) (internal citations omitted), *quoted in* Maj. Op. at 466, 22 A.3d at 193. Here, Provider is seeking to compel the Department to perform the mandatory duty of deciding the merits of its fee review petition. *See* 34 Pa.Code § 127.256 (directing the Department to issue an administrative decision on the merits of fee review petitions within 30 days). For the reasons that follow, I agree with Provider that it is entitled to the writ.

In finding against Provider, the Majority concludes that no writ shall issue in this case because "(1) [Provider] alleged that [Insurer] disputed liability by refusing payment; and (2) [Provider] challenged the propriety of [Insurer's] denial rather than the amount or timeliness of payment for a particular treatment." Maj. Op. at 473, 22 A.3d at 198. Respectfully, I believe the plain statutory language of the Workers' Compensation Act refutes these conclusions.

First, without any citation to the Act or controlling precedent, the Majority baldly concludes that Insurer's "refusal to pay [Provider] for the February 2006 surgery . . . is essentially a denial of liability for treatment," merely because the Act requires workers' compensation carriers to pay medical providers for undisputed treatment rendered in a timely manner.

*Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), *Barna v. WCAB (Jones & Laughlin Steel Corp.)*, 513 Pa. 518, 522 A.2d 22 (1987), *Mahon v. WCAB (Expert Window Cleaning)*, 835 A.2d 420 (Pa.Cmwlth. 2003) (*en banc*), and 77 P.S. § 717.1(d)(1)-(6) have?

The Majority notes that both Provider and the Department aver that this jurisprudence is inapposite to the issue of whether Provider stated a clear right to *mandamus* relief. The Majority fails to note, however, that *amicus curiae*, the Pennsylvania Association of Justice, contends that the aforementioned jurisprudence is at a minimum instructive, if not controlling, to this appeal.

*Id.* at 471, 22 A.3d at 196–97. The Majority itself recognizes, however, that Regulation 127.209 requires insurers to notify medical providers, in writing, as to why payment of a submitted medical bill is being disputed. 34 Pa.Code § 127.209(a). If a Regulation 127.209 explanation is not provided, an insurer may also dispute the necessity of treatment, or the corresponding bill, by filing for utilization review (UR) within the thirty-three day period in which the insurer has to satisfy the submitted bill. 77 P.S. § 531(5). As the Majority notes, Insurer instantly has not filed or submitted either a Regulation 127.209 explanation or for a UR under Section 531. In other words, there is no denial of liability of record,[9] and there is simply no support in the Act or this Court's jurisprudence to support the Majority's insinuation that, just because insurers should pay the medical bills sent to them, that the failure to do so *ipso facto* constitutes a denial of liability.[10]

The Majority's second conclusion (which flows from the first) that Provider is challenging the denial of liability rather than the timeliness of payment fails for the same reason: Provider is simply not challenging a denial of liability. Moreover, to the extent the Majority contends a challenge to nonpayment of a bill is not a dispute regarding the timeliness of the payment, respectfully, its logic simply fails. Any credit card company will tell its subscriber that nonpayment of a bill will incur late fees, as the bill was not paid in a timely manner. Here, too, while surely Insurer has not satisfied the bill, at the same time the payment is, by definition, untimely, *i.e.*, the bill was not paid within thirty-three days of its submission by Provider to Insurer.

While the record does not reflect a denial of liability by Insurer, the inquiry does not end there. An examination must still be undertaken as to whether Provider, in its *mandamus* complaint, stated facts sufficient for it to survive the Depart-

9. The Majority concedes as much: "[Insurer's] reasons for denying liability are not immediately obvious." Maj. Op. at 472–73 n. 8, 22 A.3d at 197 n. 8.

10. Indeed, considering the laborious nature of medical billing, one can easily imagine employers and insurers alike failing to remit payment to a medical provider for any number of good faith reasons not related to a dispute over liability or the propriety of the bill.

ment's demurrer. *See County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402, 408 (1985) (providing that if the facts as pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected). As noted in the Majority Opinion and herein, in the fee review context, issues concerning the "work-relatedness" of, or liability for, an injury cannot be decided by a fee reviewer. *Catholic Health Initiatives*, 720 A.2d at 511. Thus, the inadequate "denials of liability" by Insurer aside, we must determine whether Provider's *mandamus* complaint in fact states a claim whereby no issue of work-relatedness or liability would be decided by the fee reviewer. Put differently, does an open and unmodified NCP constitute a binding admission of liability upon an employer or its workers' compensation insurer? Contrary to the Majority, it is on this question that I believe this Court's order for supplemental briefing after dispositional review, as mentioned *supra* note 8, elucidates the affirmative answer to this inquiry.

In an effort to decide definitively whether NCPs establish liability for work-related injuries, such that there are no issues of liability for a fee reviewer to decide, we ordered the parties to supplement their principal briefs to ascertain their positions regarding three appellate decisions concerning terminations of NCPs, *Beissel v. WCAB (John Wanamaker, Inc.)*, 502 Pa.178, 465 A.2d 969 (1983), *Barna v. WCAB (Jones & Laughlin Steel Corp.)*, 513 Pa.518, 522 A.2d 22 (1987), *Mahon v. WCAB (Expert Window Cleaning)*, 835 A.2d 420 (Pa.Cmwlth.2003) (en banc); as well as a relatively recent legislative amendment to the Workers' Compensation Act, which created what is known as a Notice of Temporary Compensation Payable (NTCP).[11]

In *Beissel*, a claimant suffered a lower back injury related to a slip-and-fall in 1975. After hospitalization for the injury, her employer's workers' compensation insurer issued a NCP in 1977, and began remitting compensation payments to the

---

11. Act 44 of 1993, P.L. 190 (July 2, 1993), *as amended*, 77 P.S. § 717.1(d)(1)-(6).

claimant. In 1979, however, the insurer filed a petition to terminate the NCP, arguing that the claimant's medical condition was not causally connected to a work-related incident. The termination petition was granted by a referee, and that decision was affirmed by both the WCAB and the Commonwealth Court.

This Court, however, reversed those decisions and reinstated the NCP and the benefits flowing from it. In finding that the insurer was not entitled to a termination of the NCP, we held that the NCP constituted an admission of liability because the insurer "had an opportunity to, and in fact did, investigate the cause of [the claimant's] disability." *Id.* at 971. In so finding, we specifically denied the insurer the opportunity,

> under the guise of a termination petition, [to] come into court and use [. . .] favorable testimony [. . .] to contradict precisely that which it admitted in its notice of compensation payable, namely, that [claimant's] disability at the time of the notice of compensation was filed was related to her 1975 fall at work.

*Id.* at 971–72. This Court further stated in a footnote that NCPs are issued primarily in situations where compensation is warranted, but the final amount of the compensation is unknown, because a NCP, "like a compensation agreement, amounts to an admission by the employer of the claimant's employment, the occurrence of the accident, and the nature of the injuries caused by the accident while the claimant was in the employ of the employer." *Id.* at 972 n. 6. Thus, an employer cannot litigate that which it has already admitted, particularly when the employer had an opportunity to investigate the circumstances surrounding the injury before issuing the NCP.

Four years later, in *Barna*, we considered an instance where an employer challenged the continued viability of an issued NCP in light of an investigation into an employee's claims, which determined that the subject injury was not work-related. There, and differently from *Beissel*, the employer had first issued a NCP, and then immediately com-

menced an investigation into liability, which, in the end, determined that the employee's injury was not work-related. In permitting the employer to revoke the NCP, we first noted that any NCP that provides for compensation for a non-work-related injury constitutes a materially incorrect NCP, such that it may be modified or terminated. *Barna*, 522 A.2d at 23 (citing 77 P.S. § 771). We thus distinguished *Barna* from the general holding in *Beissel* on the procedural history of the case, stating that in a situation where

> an employer promptly commences payment of compensation prior to commencement or completion of investigation into the cause of claimant's injuries and later determines that the claimant's disability was never work-related, in the absence of evidence of repeated contests of the cause of disability such as occurred in *Beissel*, the employer must be permitted to seek relief.

*Barna*, 522 A.2d at 23. Again, the basis for the distinction drawn is that in *Beissel*, we found that the initially issued NCP was materially correct, and years after it was issued, the employer simply wanted to "change its mind" concerning liability. Contrarily, in *Barna*, the employer issued a NCP, concomitantly investigated the circumstances surrounding the injury, and then determined that the NCP was materially incorrect.

In 1993, six years after *Barna*, the Legislature significantly amended the Workers' Compensation Act, to permit employers and insurers alike to issue Notices of Temporary Compensation Payable (NTCPs). 77 P.S. § 717.1(d)(1)-(6). NTCPs permit employers, in any instance where the employer "is uncertain whether a claim is compensable under [the Workers' Compensation Act] or is uncertain of the extent of its liability under this act," to initiate compensation payments "without prejudice and without admitting liability...." 77 P.S. § 717.1(d)(1).[12] The payment of temporary compensation may continue for ninety days, while the employer or insurer inves-

---

12. Employers/insurers may also file "medical-only" NTCPs for cases in which only the costs of medical treatment are relevant. *See* 34 Pa.Code § 121.7a(d).

tigates the circumstances surrounding the claim. *Id.* § 717.1(d)(2)(ii).[13] During the ninety-day period, an employer may notify the claimant that it believes that there is no liability for the claim, thus withdrawing the NTCP and forcing the claimant to file a claim petition, should she seek to pursue her workers' compensation claim. *Id.* § 717.1(d)(4), (5)(i)-(iii). If, however, the employer does not file notice under subsections (4) and (5) by the conclusion of the ninety-day period, "the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable." *Id.* § 717.1(d)(6).

Ten years after the enactment of Section 717.1(d) concerning NTCPs, the Commonwealth Court, sitting *en banc,* upheld the continued viability of the *Barna* decision that an employer can issue a NCP, investigate the claim, and then withdraw the NCP averring it is materially incorrect, despite the new provisions allowing for NTCPs. *Mahon v. WCAB (Expert Window Cleaning),* 835 A.2d 420 (Pa.Cmwlth.2003) (*en banc* ), *appeal denied* 578 Pa. 691, 849 A.2d 1206 (2004) (*per curiam* ). In *Mahon,* a claimant fell from a ladder, breaking both ankles. The employer immediately issued a NCP, and acknowledged that the injury was work-related. Nevertheless, approximately sixty days after issuing the NCP, the employer petitioned for review with intent to terminate the NCP, based upon a subsequent investigation that revealed the claimant was intoxicated at the time of the fall. A workers' compensation judge sustained the petition, revoked the NCP, and denied all benefits to the claimant, on the basis that the injury was not work-related, and that, in accord with *Barna,* the NCP would be deemed materially incorrect. The WCAB affirmed.

Before the Commonwealth Court, the claimant argued, *inter alia,* that the employer should be estopped from invoking the *Barna* rule, because it did not issue a NTCP and investigate the claim for ninety days in accord with Section 717.1(d). In disagreeing with the claimant, the court first stated that the

13. Originally, the period of time permitted for investigation was six weeks. Act 57 of 1996 amended subsection (d)(2), and increased the allowable time to ninety days.

sole issue for review was whether the information received by the employer during the investigation (which commenced after issuance of the NCP), could be used in considering the review petition. The court held that such information could be used, based on the *Barna* decision. The court then found the NTCP provisions of Section 717.1(d) inapplicable to the appeal, reasoning that the employer may only issue a NTCP when it is "uncertain" of the cause of, or liability associated with, an alleged injury. *Mahon*, 835 A.2d at 425 (quoting 77 P.S. § 717.1(d)(1) ("In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act [, the employer may issue a NTCP].")). Here, the employer was at first "certain" that the fall and consequent injuries sustained were work-related, but then came upon information that the claimant was intoxicated. Accordingly, under *Barna*, the Commonwealth Court held that the employer was permitted to seek revocation of the NCP.

Judge Pellegrini, joined by Judge Smith–Ribner, filed a vigorous dissent. In the dissent's view, issued NCPs are final, may not be amended based solely on after-discovered evidence that existed at the time of issuance, and have the sole purpose of admitting liability for the accident. *Mahon*, 835 A.2d at 432 (Pellegrini, J., dissenting). According to the dissent, the General Assembly created NTCPs for situations precisely as the one presented in the *Mahon* (and *Barna*) case: to permit employers unfettered opportunity to investigate a claim, while the injured employee receives benefits without interruption. To permit the revocation of issued "permanent" NCPs, however, transforms all NCPs into "temporary" issuance of benefits, subject to revocation upon the mere filing of a review petition, abrogating the relevance of the 1993 amendments to the Workers' Compensation Act creating NTCPs.

In its supplemental brief filed before this Court, Provider first acknowledges the tension between the *Beissel, Barna,* and *Mahon* cases, and Section 717.1(d). In that light, Provider urges this Court, should we feel compelled to resolve that tension, to adopt Judge Pellegrini's dissenting view in *Mahon,*

and make clear that issued NCPs are final and binding, in recognition of the fact that issued NTCPs allow benefits to flow to a claimant even when issues of liability remain pending. Thus, in Provider's view, the final and binding nature of NCPs makes the legal right to an administrative decision of the fee review petition clear.

The Department counters that, regardless of *Beissel,* its progeny, and Section 717.1(d), the fact remains that Provider did not plead in its *mandamus* complaint that no issues of liability remain pending. Rather, Provider merely averred that the NCP remained "open and unmodified." To the Department, then, the complaint did not state a claim upon which relief could be granted, and the Commonwealth Court correctly sustained the demurrer. The Department further contends that in *Beissel, Barna,* and *Mahon,* liability for the sustained injuries was explicitly at issue before a WCJ, whereas liability is not before the Department in the instant case because it cannot be decided in a fee review petition. *See Catholic Health Initiatives,* 720 A.2d at 511 (holding that there is no authority "for a Hearing Officer to decide the issue of liability in a fee review proceeding."). Finally, the Department argues that, should we accept NCPs as absolute admissions of liability, then employers and insurers may, in the future, decline to issue NCPs as common practice and force protracted and, perhaps unnecessary, litigation.

The Pennsylvania Association for Justice (PAJ) filed a brief as *amicus curiae* in support of Provider. Citing heavily to *Beissel,* the PAJ avers that the full force of an NCP is to serve as an admission by the employer of the claimant's employment, the occurrence of the accident, and the nature of the injuries sustained, while the claimant was employed by the employer. Moreover, according to the PAJ, with the creation of NTCPs in 1993, *Barna* and *Mahon* are completely inconsistent with both the statutory scheme of Section 717.1(d), as well as the explicit directive of *Beissel,* that NCPs constitute binding admissions of liability for the injury sustained. In the PAJ's view, the Legislature has specifically created an investigative period through Section 717.1(d)(3) and (4), and to

permit employers or insurers to first issue and then challenge permanent NCPs, when NTCPs exist through statutory mandate, defeats the purpose of the 1993 amendments, upsetting a carefully constructed legislative process put in place to protect the rights of all parties to a workers' compensation case.

As noted above, Insurer issued a NCP for Claimant's injuries on January 12, 2006; Provider alleged in its *mandamus* complaint that, through the issued NCP, Insurer "voluntarily accepted liability for [the surgical repair of] the umbilical hernia that [Claimant] sustained...." (Compl.¶ 5). Further, neither Employer nor Insurer have "filed a petition to modify or terminate" the NCP, which to this day remains open and unmodified. (Compl. ¶ 6; *see also* ¶¶ 12, 14). For the reasons that follow, I would hold that these facts, as stated, are sufficient to survive the Department's preliminary objection in the nature of a demurrer.

As noted *supra,* notes 2 through 5, the fee review process is utilized when a provider disputes the amount or timeliness of a requested payment from an employer or insurer. 34 Pa.Code § 127.251. Payment of a fee by an employer or insurer is considered untimely if not remitted within thirty-three days after the medical provider submitted the bill. 77 P.S. § 531(5); 34 Pa.Code 127.208(b). During that thirty-three day period, however, the employer or insurer may file a request for UR of any part of the bill it disputes. 77 P.S. § 531(5). If a UR request is filed, the period of time a provider has to file a fee review petition is tolled. *Id.* Otherwise, the Department "shall render an administrative decision on the merits of the fee review petition within 30 days," *id.,* but only if the application is properly before the Department. 34 Pa.Code § 127.255, *supra* note 5. As already explained, Insurer did not (and, indeed, to this day has not) remitted payment for the bill, nor has it disputed liability pursuant to Regulation 127.209 or filed for UR pursuant to Section 531(5) of the Act.[14]

14. Respectfully, I again must state my adamant disagreement with the Majority that Insurer's refusal to pay Provider's bill constitutes a denial of liability, thus creating an issue regarding liability for a fee reviewer

In my view, then, the *Beissel* line of cases, as well as the statutory provisions creating NTCPs, are both relevant and controlling in determining whether the medical-only NCP in this case is a binding admission of liability. Regarding that jurisprudence, I first note that an obvious tension exists between *Beissel, Barna/Mahon,* and 77 P.S. § 717.1(d). The clear holding of *Beissel,* however, is worth reiterating: the issuance of a NCP equates to an admission of liability by an employer or its workers' compensation carrier for the work-relatedness of an injury sustained. *Beissel,* 465 A.2d at 971–72.[15] Second, I recognize that much of the *Barna* decision was based upon 77 P.S. § 771, which permits NCPs to be modified or set aside upon a petition filed by any party with the Department, if the moving party proves "that such notice of compensation payable . . . was in any material respect incorrect." That limitation on *Beissel,* as set forth in *Barna,* was necessary at the time to facilitate the dual goals of ensuring that (1) injured workers immediately receive compensation, while (2) permitting employers the opportunity to investigate and challenge incorrectly issued NCPs to make certain that only meritorious claims are ultimately paid.

Significantly, however, since the enactment of Section 717.1(d), employers and insurers have been statutorily given the opportunity envisioned by *Barna* to investigate when any uncertainty arises regarding the material correctness of the injury undergirding the claim for compensation. By issuing a NTCP, employers invoke a statutory procedure which permits them to "initiate compensation payments without prejudice and without admitting liability" for the injury, while simultaneously commencing an investigation into the nature of the injury. 77 P.S. § 717.1(d)(1). Subsection (d)(2) specifies that

to decide. If Insurer wished to dispute a portion or all of the submitted bill, it needed to file either a denial pursuant to Regulation 127.209 or a UR under 77 P.S. § 531(5) & (6).

**15.** To that end, I do not dispute that employers and insurers possess the ability to have benefits modified or terminated through petitions, should an injured employee's condition change for reasons unassociated with the employment-related disability. *Accord Beissel,* 465 A.2d at 972.

employers/insurers must notify claimants that the NTCP is "not an admission of liability of the employer with respect to the injury which is the subject" of the NTCP. The Department must send an identical notice to the claimant, specifying that a claimant's acceptance of compensation pursuant to a NTCP "does not mean that the claimant's employer is accepting responsibility for the injury," *id.* § 717.1(d)(2)(i), and that the "claimant may need to file a claim petition . . . or receive a notice of compensation payable to ensure continuation of compensation payments." *Id.* § 717.1(d)(2)(iii). Under these provisions, it is clear that issuing a NTCP does not inure any liability upon an employer while the NTCP is in effect. Of great importance, however, should an employer not controvert or withdraw the NTCP within ninety days, "the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable." *Id.* § 717.1(d)(6).

The statutory construct of Section 717.1(d) is clear, then, that NTCPs are temporary and do not admit liability in any sense, but in ninety days do by operation of law convert into NCPs, which, in accord with *Beissel,* are final admissions of liability. Prior to this statutory modification, there was uncertainty in the law. It was implicitly unclear whether, under what circumstances, and for what length of time, an employer or insurer could attempt to invoke material incorrectness to abrogate a previously issued NCP. This potentially prejudiced both employers/insurers attempting in good faith to do the right thing by paying compensation to an injured employee while preserving their ability to investigate, as well as employees who could never be sure when their NCP was absolutely final. The legislature has wisely ended this uncertainty, and thereby ended the *Beissel/Barna* conflict. When an employer/insurer recognizes that it may be liable for compensation, but wants time to investigate, its remedy is to issue a NTCP. It knows it has ninety days, and no more, to accept permanent liability by doing nothing, or to serve notice that it will not accept liability, and that a claimant must act to pursue a claim

within the normal course. The Commonwealth Court's holding in *Mahon*, yields the statutorily unintended, if not absurd, result of permitting an employer to first issue a NTCP, wait ninety days and have it converted into a NCP, and then take the proverbial "second bite at the apple" by arguing material incorrectness under *Barna*. Accordingly, and consistent with the provisions of Section 717.1, the holding in *Beissel* that an issued NCP is final and admits liability for a work-related injury remains sound. Further, the exception to *Beissel* created by *Barna,* and employed by the *Mahon* majority, has been supplanted by the passage of Section 717.1(d).[16]

As related to the statutory provisions and regulations governing fee review petitions, I again recognize the general presumption that fee review applications cannot be decided if issues of liability are pending, *see Catholic Health Initiatives,* 720 A.2d at 509; and that fee reviewers may not decide issues of liability when reviewing a provider's petition. However, if NCPs are to have any relevance after the General Assembly's creation of NTCPs, they must be considered binding admissions of liability. If, then, an admission of liability exists through a NCP, a fee review petition filed by a medical provider based on an issued NCP cannot be premature and there is no legal dispute for a fee reviewer to decide. *Cf.* 34 Pa.Code § 127.255(1); *see also* note 13, *supra.* Accordingly, fee review petitions filed by medical providers under the auspices of and, indeed, in reliance on, such NCPs, must be reviewed by the Department pursuant to 77 P.S. § 531(5) and 34 Pa.Code § 127.256. Thus, under the facts of this case, the NCP issued to Claimant, in reliance upon which Provider

16. I recognize that Section 771 grants a WCJ at any time the ability to review, modify, or set aside a NCP, if proven that such NCP is materially incorrect. As noted herein, however, an uncertainty existed between *Beissel* and *Barna* as to when Section 771 could be used to correct "investigative" mistakes in issued NCPs. In my view, any uncertainty between these two decisions has been resolved by the General Assembly's enactment of Section 717.1 regarding NTCPs. I do not dispute the continued availability of Section 771, but giving employers and insurers the opportunity to challenge retroactively liability after issuing a NCP would turn Section 717.1 into a nullity.

performed medical services and sought payment, resulting in the subsequent application for fee review, is binding upon all parties, and constitutes an admission of liability by Insurer that Claimant's injury was work-related and compensable.

Accordingly, the averments made in Provider's *mandamus* complaint that the issued NCP constitutes an admission of liability, and has yet to be terminated or modified, are clearly sufficient for Provider to survive the Department's preliminary objection in the nature of a demurrer. *County of Allegheny*, 490 A.2d at 408 (providing that if the facts as pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected). First, the mere nonpayment of the bill constitutes neither a denial of liability nor dispute of a submitted bill. Further, Provider is clearly challenging the timeliness of the (non)payment, and nothing more; and, because the NCP constitutes a binding admission of liability, Provider is entitled to an administrative decision on the merits of its fee review petition. Thus, I would reverse the order of the Commonwealth Court, and remand this case for further proceedings. As the Majority holds otherwise, I respectfully dissent.

Justices TODD and McCAFFERY join the opinion.