# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prescription Partners, LLC,            :
                 Petitioner            :
                                         :
            v.            :    No. 2107 C.D. 2014
                                           :    Submitted: July 17, 2015
Bureau of Workers' Compensation            :
Fee Review Hearing Office            :
(Healthsmart Casualty Claims            :
Solutions),            :
                 Respondent            :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE P. KEVIN BROBSON, Judge
                     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                          **FILED:  September 30, 2015**


Prescription Partners, LLC (Prescription Partners) filed a petition for review of an order of a Bureau of Workers' Compensation (Bureau) Fee Review Hearing Officer (Hearing Officer), denying and dismissing Prescription Partners' request for a hearing.  For the reasons discussed below, we vacate the order and remand for proceedings consistent with this opinion.

The facts of this case are not in dispute.  Steve Sieminski (Claimant), an employee of Allegheny Technologies (Employer), suffered a work-related injury on December 3, 1998.  Claimant receives treatment for his injury, a chronic pain condition, from Dr. Michael Toshok (Provider).  As part of Claimant's

treatment, Provider dispensed four prescription medications[1] out of his office. Provider obtained these medications from an unknown vendor who, prior to giving them to Provider, had repackaged the medications. Because the vendor repackaged the medications, each medication had two packaging or NDC codes—one from the manufacturer (original manufacturer NDC code or OMNDC code) and a repackaged NDC code.

Provider did not bill Employer directly for the medications dispensed to Claimant but instead assigned the claim to Prescription Partners. Prescription Partners then billed Employer, a self-insured entity, and its third-party administrator, Healthsmart Casualty Claims Solutions (Healthsmart), a total of $2,640.34 for the four medications. Prescription Partners arrived at this total by calculating 110% of the average wholesale price (AWP)[2] of each medication based upon the repackaged NDC code. After reviewing the claim, Healthsmart reimbursed Prescription Partners for $1,992.99, an amount equal to 110% of the AWP of each medication based upon the OMNDC code.

After receiving the partial payment from Healthsmart, Prescription Partners filed an application for fee review with the Bureau. The Bureau's Medical Fee Review Section determined that Prescription Partners was not entitled to any additional compensation from Healthsmart because Prescription Partners, as

---

[1] The prescription medications dispensed by Provider to Claimant are Lyrica, Terocin, Zolpidem Tartrate, and Lidoderm Patches.

[2] The workers' compensation regulations provide that "[w]hen a prescription is filled at a physician's office, payment for the prescription drug shall be limited to 110% of the average wholesale price of the product." 34 Pa. Code § 127.135(a).

a third party, was not entitled to reimbursement. Prescription Partners then filed a request for a fee review hearing to contest the adverse determination.

At a hearing held July 17, 2014, Healthsmart presented the testimony of Mr. William Jobes. Mr. Jobes testified that it is Healthsmart's policy to deny claims using repackaged NDC codes and ask that the claim be resubmitted with the "correct" NDC codes. (Reproduced Record (R.R.) 32-33a.) When asked on cross-examination to identify the regulation that required the OMNDC code be used, Mr. Jobes was unable to do so. (R.R. 40-41a.)

Wendy Caldera, the manager of Prescription Partners' billing department, testified that claims are prepared using "the NDC of the medication that was dispensed to the patient." (R.R. 49a.) Prescription Partners then uses the Thompson Reuters Red Book (Red Book), the schedule of AWPs used in Pennsylvania, to determine 110% of the AWP for any medications dispensed by Provider. (R.R. 48-50a.) She also testified that she was unaware of any regulation which required the OMNDC code to be used to determine the AWP. (R.R. 57a.) During cross-examination, Ms. Caldera testified that Prescription Partners was "strictly a billing company." (R.R. 51a.) She further testified that Prescription Partners did not provide prescription medication or healthcare services, but, instead, it was Provider's "assignee," handling the billing for medications dispensed by Provider in his office. (R.R. 51a.)

In his decision, the Hearing Officer noted that there were only two issues, both of them questions of law: (1) whether Prescription Partners, as an assignee of Provider, had standing to file the fee review application, and (2) whether the proper amount for reimbursement for a repackaged drug is based upon the OMNDC code or the repackaged NDC code. (R.R. 7a.) As to the first

issue, the Hearing Officer found that "Prescription Partners is not a provider of healthcare services. It is, instead, an assignee of the provider." (R.R. 10a.) The Hearing Officer then concluded that as an assignee, Prescription Partners had no standing to request the fee review:

> The party requesting review, Prescription Partners, has failed to meet the burden of proof required to demonstrate that it is a proper party. Prescription Partners has failed to meet the burden of proof required to establish that it was a party competent either to file an original Application for Fee Review or a Request for de novo appeal therefrom. The applicable provision of the law, and its corresponding regulation, grant only to providers, not assignees, the right to file an Application for a Fee Review. Section 306(5) of the [Workers' Compensation] Act [(Act), Act of June 2, 1915, P.L. 736, *as amended*,] 77 P.S. § 531(5).[3]
>
> A provider, also known as healthcare provider, is defined in the regulations as follows: "A person, corporation, facility or institution licensed, or otherwise authorized, by the Commonwealth, to provide healthcare services, including physicians . . ., pharmacists, and officers, employees or agents of the person acting in the course and scope of employment or agency related to healthcare services."[4]
>
> No mention is made in this definition of an assignee.
>
> It is specifically concluded as a matter of law, in this regard, that an assignee is not an agent of the healthcare

---

[3] Section 306(5) of the Act provides, in pertinent part: "A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department . . . ." The corresponding regulation likewise provides: "A provider who has submitted the required bills and reports to an insurer and who disputes the amount or timeliness of the payment made by an insurer, shall have standing to seek review of the fee dispute by the Bureau." 34 Pa. Code § 127.251.

[4] 34 Pa. Code § 127.3.

> provider in the present case. An agent is an individual or entity that acts on behalf of a provider or other party.
>
> An assignee is a claim holder in its own right.
>
> Prescription Partners has no standing in this forum.

(R.R. 11a (second to last alteration in original).) The Hearing Officer also concluded that any assignment of Provider's claim to Prescription Partners was in violation of Section 318 of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 621. Section 318 of the Act provides, in pertinent part, that "[c]laims for payments due . . . shall not be assignable."

> As to the second issue, the Hearing Officer found that
>
> in billing [Employer/Healthsmart] the amount of $2,640.34, Prescription Partners was, indeed, using a repackaged drug NDC code, deriving the [AWP] of same, and then adding 10%. It is similarly found . . . that the amount paid by [Employer] was indeed $1,992.99. It is found as fact . . . that this was a correct amount when applying the original manufacturer NDC codes and the amounts derived with regard thereto from the Red Book for such original manufacturer packaging.

(R.R. 10a.) The Hearing Officer then concluded that Healthsmart was only liable for "the original manufacturer average wholesale price, and not for the amount corresponding to the repackaged number." (R.R. 12a.) The Hearing Officer explained that the OMNDC code was the correct NDC code to use because "the law makes no provision for liability for reimbursement for repackaged drugs at a higher rate than that of the original manufacturer." (R.R. 12a.) He also noted that the purpose of the regulations was to curtail escalating medical costs, and allowing the use of a repackaged NDC code which corresponded to a higher AWP would go against that purpose. (R.R. 12-13a.)

On appeal to this Court,[5] Prescription Partners argues that the Hearing Officer erred in considering whether Prescription Partners had standing to file a fee review application and whether the assignment of Provider's claim to Prescription Partners violated the Act, because those issues exceeded the scope of the Hearing Officer's jurisdiction.[6] Prescription Partners also argues that the Hearing Officer erred in addressing the merits of the fee dispute given that Prescription Partners' standing was in question.[7]

This Court has explained that a "fee review is designed to be a 'simple process' with a 'very narrow scope' limited to determining the 'relatively simple matters' of 'amount or timeliness' of payment for medical treatment." *Selective Ins. Co. of Am. v. Bureau of Workers' Comp. Fee Review Hearing Office (The Physical Therapy Inst.)*, 86 A.3d 300, 303-04 (Pa. Cmwlth.) (*Selective Insurance*) (quoting *Crozer Chester Med. Ctr. v. Dep't of Labor & Indus., Bureau of Workers' Comp., Health Care Servs. Review Div.*, 22 A.3d 189, 196-97 (Pa. 2011)), *appeal denied*, 96 A.3d 1030 (Pa. 2014). Accordingly, this Court has held that "the Bureau lacks jurisdiction to determine whether an entity is a 'provider' of medical

---

[5] This Court's review of a decision by a Bureau fee review hearing officer is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, and whether the hearing officer committed an error of law. *Physical Therapy Inst., Inc. v. Bureau of Workers' Comp. Fee Review Hearing Office (Selective Ins. Co. of SC)*, 108 A.3d 957, 959 n.3 (Pa. Cmwlth. 2015).

[6] Prescription Partners also makes arguments in the alternative as to the merits of these issues. Because we agree that these issues exceeded the scope of the Hearing Officer's jurisdiction, we need not address these arguments.

[7] Prescription Partners also argues that the Hearing Officer incorrectly interpreted the Act and erred in concluding that only an original manufacturer NDC code could be used. Because we agree that the Hearing Officer should not have addressed this issue at this time, we need not address this argument.

services, or simply a billing agency. This is a question of liability, which is beyond the scope of a fee review and must be decided by a workers' compensation judge." *Physical Therapy Inst., Inc. v. Bureau of Workers' Comp. Fee Review Hearing Office (Selective Ins. Co. of SC)*, 108 A.3d 957, 959 (Pa. Cmwlth. 2015) (*PTI*) (citing *Selective Insurance*, 86 A.3d at 304-05). In this case, Prescription Partners' standing was challenged on the basis that it was not a provider under the Act but was, instead, merely a billing agency. Under *Selective Insurance* and *PTI*, this is a question of liability to be decided by a workers' compensation judge (WCJ). Thus, we agree with Prescription Partners that the issue of Prescription Partners' standing was outside the scope of the fee review process and that the Hearing Officer erred in considering this issue.

Likewise, the legality of Provider's assignment to Prescription Partners falls well outside the "very narrow scope" of a fee review, as it is not at all related to the amount or timeliness of the payment. *See Selective Insurance*, 86 A.3d at 303. The Hearing Officer, therefore, exceeded his jurisdiction in addressing this issue.

What is clearly within the jurisdiction of the Hearing Officer, on the other hand, are the merits of the fee dispute—*i.e.*, which NDC code should be used. *See id.* at 304 n.6 (noting that "disputed billing codes" are a "classic example" of a dispute encompassed by the fee review process). This Court, however, has stated that "[l]iability must be established before a fee review proceeding can take place. . . . [T]he fee review process assumes that the person seeking a fee review has been established as a valid medical provider." *Id.* at 304-05. We, therefore, also agree that the Hearing Officer erred in

7

addressing the merits of the fee dispute before the issue of Prescription Partners' standing was resolved by a WCJ.

Accordingly, we vacate the Hearing Officer's order and remand the case to the Bureau to either be dismissed without prejudice or stayed until the issue of Prescription Partners' standing is decided by a WCJ.

 

 

 

 

_____

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prescription Partners, LLC,     :
                    Petitioner     :
                        :
         v.     :    No. 2107 C.D. 2014
                        :
Bureau of Workers' Compensation     :
Fee Review Hearing Office     :
(Healthsmart Casualty Claims     :
Solutions),     :
                    Respondent     :

## O R D E R

AND NOW, this 30th day of September, 2015, the order of the Bureau of Workers' Compensation (Bureau) Fee Review Hearing Office is hereby vacated, and the matter is remanded to the Bureau with further direction to either stay the matter or dismiss the case without prejudice in accordance with this opinion.

Jurisdiction relinquished.

                                                _____

                                            P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prescription Partners, LLC, :
                         Petitioner :
                                     :

              v. : No. 2107 C.D. 2014
                                     :

Bureau of Workers' Compensation : Submitted: July 17, 2015
Fee Review Hearing Office :
(Healthsmart Casualty Claims :
Solutions), :
                     Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**CONCURRING OPINION**
**BY JUDGE COHN JUBELIRER**               **FILED: September 30, 2015**

      I respectfully concur with the thoughtful Majority opinion which has applied existing precedent. However, I write separately because I believe that our precedent should be reconsidered in light of the manner in which fee review hearings may now be conducted by the Bureau of Workers' Compensation (Bureau). Moreover, in this particular case, I question the practical result of remanding this matter for continued proceedings.

In <u>Crozer Chester Medical Center v. Bureau of Workers' Compensation,</u> <u>Health Care Services Review Division</u>, 22 A.3d 189 (Pa. 2011), our Supreme Court quoted the Department of Labor and Industry's description of the fee review process stating that it was

> administered by **nurses** who determine whether employers' payments are timely paid or properly calculated under the workers' compensation fee schedule and medical billing protocols. While these personnel are experienced and knowledgeable about the workers' compensation fee schedule, their skills are markedly distinct from [workers' compensation judges], who [as attorneys with a mandatory minimum of five years' workers' compensation law experience] are trained to conduct hearings and make credibility determinations.

<u>Id.</u> at 196 (alteration in original) (emphasis added) (quotation omitted). Our Supreme Court, thus, concluded that "[i]t is apparent that the fee review process has a very narrow scope within the broader legislative and regulatory scheme of compensating claimants for work-related injuries" and that "[f]ee review is a process for medical care providers to dispute the amount or timeliness of an insurer's payment for a particular treatment, which are relatively simple matters." <u>Id.</u> at 196-97 (quotation omitted). The Supreme Court noted that decisions concerning liability were to be made by "**specially qualified workers' compensation judges**" rather than "**non-qualified personnel within the Department**." <u>Id.</u> at 198 (emphasis added). Thus, the Supreme Court held that, because the fee review petition at issue raised questions regarding the ultimate liability for the injury, the petition fell outside the scope of the fee review process. <u>Id.</u> at 197-98.

This Court later applied Crozer in Selective Insurance Company of America v. Bureau of Workers' Compensation Fee Review Hearing Office (The Physical Therapy Institute), 86 A.3d 300, 304 (Pa. Cmwlth.), petition for allowance of appeal denied, 96 A.3d 1030 (Pa. 2014), to conclude that the issue of whether an entity is a "provider" is also beyond the scope of the fee review process. We noted that "[l]iability must be established before a fee review proceeding can take place. Further, the fee review process assumes that the person seeking a fee review has been established as a valid medical provider." Id. at 304-05. Therefore, we determined that "[t]he question of whether [a party] is a 'provider' **is a complex issue for a workers' compensation judge to decide**." Id. at 305 (emphasis added).

Here, the Majority relies on both Crozer and Selective Insurance Company to conclude that the Bureau's Fee Review Hearing Officer (Hearing Officer) lacked jurisdiction to determine whether Prescription Partners was a provider. In reviewing the record, however, I note that the Hearing Officer in the instant matter was a Workers' Compensation Judge (WCJ). Although WCJ David Torrey was not acting in his capacity as a WCJ when hearing this matter, he regularly serves as a WCJ.[1] The fact that a WCJ presided over the fee review hearing calls into question the basis of Crozer and Selective Insurance Company, that fee review hearing officers are not capable of deciding complex legal issues such as whether

_____

[1] I note that WCJ Torrey is the co-author of the definitive Pennsylvania workers' compensation treatise, David B. Torrey & Andrew E. Greenberg, Workers' Compensation Law and Practice (3d ed. 2008), which is frequently cited by Pennsylvania appellate courts in their workers' compensation jurisprudence. See, e.g., Tooey v. AK Steel Corporation, 81 A.3d 851, 874 (Pa. 2013); Young v. Workers' Compensation Appeal Board (Chubb Corporation), 88 A.3d 295, 301 n.8 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014).

an entity is a provider. Clearly, this case did not involve a "nurse" who lacks the skills necessary to determine whether Prescription Partners is a provider, but rather, a "specially qualified workers' compensation judge." Crozer, 22 A.3d at 196, 198. To the extent that WCJs are conducting fee review proceedings, the circumstances upon which the holdings in Crozer and Selective Insurance Company were based have changed. Therefore, reconsideration of those cases appears appropriate in light of the changed circumstances.

In addition, I question remanding this matter to a WCJ to make a determination regarding whether Prescription Partners is a provider. Given that WCJ Torrey already made that determination, albeit acting in a different capacity, it seems unnecessary to remand the matter in order that someone wearing his or her "WCJ hat" may decide whether Prescription Partners is a provider. In remanding the matter, the Majority appears to have elevated form over substance with respect to how the fee review process should be conducted.

Moreover, Allegheny Technologies (Employer), through its third-party administrator, Healthsmart Casualty Claims Solutions (Healthsmart), has already paid Prescription Partners the amount it believes was owed; therefore, there has been an implicit assumption that Prescription Providers was a provider in this matter. Thus, I do not believe we need to reach the issue of whether Prescription Partners is a provider, but may affirm on the merits, based on WCJ Torrey's sound reasoning that Employer/Healthsmart paid the proper amount.

WCJ Torrey addressed the merits of the claim, relying on Section 306(f.1)(3)(vi) of the Workers' Compensation Act[2] (Act) (providing that "[t]he reimbursement for drugs and professional pharmaceutical services shall be limited to one hundred ten per centum of the average wholesale price (AWP) of the product"), and Section 127.135(a) of the Workers' Compensation Regulations, 34 Pa. Code § 127.135(a) (providing that "[w]hen a prescription is filled at a physician's office, payment for the prescription drug shall be limited to 110% of the [AWP] of the product"), to conclude that Employer/Healthsmart was liable for 110% of the original manufacturer AWP, instead of the higher, repackaged drug price. (Amended Fee Review Decision, Conclusions of Law (COL) ¶ 4.) WCJ Torrey determined that allowing a provider to recover 110% of the repackaged drug price would defeat the medical cost containment provisions of the Act. (COL ¶ 4.) Because it appears that WCJ Torrey's analysis of the amount owed Prescription Partners is correct, I believe that it would better serve judicial economy to affirm on the basis of his analysis of the merits, rather than to waste judicial resources to remand the matter to a WCJ to determine whether Prescription Partners is a provider, when Prescription Partners' fee review is unlikely to ultimately succeed. Affirming on the basis of WCJ Torrey's analysis of the merits of the fee review is also more in line with the cost containment provisions of the Act.

Nevertheless, despite my significant reservations regarding the outcome reached by the Majority, it appears that the Majority's vacation of the Order and

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 531(3)(vi).

RCJ-5

remand of this matter is not incorrect based on existing precedent. Accordingly, I must concur in the result.

                                               _____

**RENÉE COHN JUBELIRER, Judge**