# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fort Washington Surgery Center, : 
                    Petitioner : 
                               : 
                 v. :     No. 271 C.D. 2022
                               :     SUBMITTED: August 9, 2024
Indemnity Insurance Company of : 
North America and ESIS, Inc. (Bureau : 
of Workers' Compensation Fee Review : 
Hearing Office), : 
                 Respondents :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: April 14, 2025**

        Provider, Fort Washington Surgery Center, petitions for review of an adjudication of the Bureau of Workers' Compensation, Fee Review Hearing Office, that affirmed as modified the decision of the Bureau's Medical Fee Review Section. In the adjudication, the hearing officer (1) directed Respondents, Indemnity Insurance Company of North America (Insurer), and third-party administrator (TPA), ESIS, Inc., (collectively, Insurer/TPA) to issue payment for two dates of service (4/15/2021 and 5/13/2021), plus statutory interest, but otherwise found no additional payments due for other dates of service; and (2) affirmed the

administrative decisions issued previously.[1] For the reasons that follow, we reverse and remand.

In October 2018, Claimant, Jasmine Sumair, sustained a work injury while employed by Employer, Acadia Healthcare Company, Inc. 2/28/2022 Adjudication, Finding of Fact (F.F.) No. 3. As a result of her right hand being caught in a closing elevator door, she sustained a right-hand crush, right-shoulder tear, brachial plexus traction injury, and complex regional pain syndrome. In June 2021, these injuries were expanded to include chronic pain and psychic injuries. *Id.* Pertinent here, Provider rendered medical services (ketamine infusions) to Claimant approximately every month on the following 13 dates of service: 7/30/2020; 8/27/2020; 10/01/2020; 11/19/2020; 12/22/2020; 1/21/2021; 2/18/2021; 3/18/2021; **4/15/2021**; **5/13/2021**; 7/13/2021;[2] 7/29/2021; and 8/05/2021. F.F. No. 4 (emphasis added). Each date of service, Provider submitted bills to Insurer/TPA for $8700 with the following codes and charges: (1) **Code 96365 SG**-$4200; (2) **Code 96366 SG 51**-$3000; and (3) **Code 00600 SG 59**-$1500. F.F. No. 5. Insurer/TPA timely reimbursed Provider for some but not all the bills at issue. F.F. Nos. 6 and 8. "Insurer/TPA candidly admit[ted] payment for [d]ates of [s]ervice 4/15/2021 & 5/13/2021 *was not tendered.*"[3] 2/28/2022 Adjudication at p.10 (emphasis added). Further, with respect to the bills that were paid, it is undisputed that Insurer/TPA

[1] All Respondents were precluded from filing briefs and participating in oral argument, if scheduled, for failure to file briefs pursuant to this Court's order of November 2, 2023. 12/11/2023 Cmwlth. Ct. Order.

[2] The record reflects that the date of service was 7/01/2021, not 7/13/2021. Provider's Ex. P-6 (medical records/bills for 1/21/2021 to 8/05/2021); Reproduced Record (R.R.) at 475a-86a.

[3] "The 30-day period in which payment shall be made to the provider may be tolled only if review of the reasonableness and necessity of the treatment is requested during the 30-day period under the [utilization review] provisions of Subchapter C (relating to medical treatment review)." 34 Pa. Code § 127.208(e). Insurer/TPA did not engage in the utilization review process.

paid only a fraction of what was billed. *See* Provider's Br., App. 1 (chart detailing dates of service, total billed, total paid, percentage paid, and denial/payment explanations) and Insurer/TPA's Ex. E-1 (bills, payment information); Reproduced Record (R.R.) at 201a-10a. According to Provider, it "billed $90,480.00 in total for the dates of service at issue. [It] is entitled to reimbursement of $72,384, which is 80% of $90,480. Insurer has paid only $28,669.44, and owes $43,714.56, plus interest." Provider's Br. at 11.

Pursuant to Section 306(f.1)(5) of the Workers' Compensation Act (Act),[4] Provider timely filed and served 13 applications for fee review. None of the applications detailed what the codes represented, simply stating that the "charge was billed correctly and is payable in the [ambulatory surgical center (ASC)]." F.F. No. 5. In addition, the applications referenced regulatory provision 34 Pa. Code § 127.125, providing that "[f]or surgical procedures not included in the Medicare list of covered services, payments shall be based on 80% of the usual and customary charge." *See, e.g.*, Hearing Officer's Ex. J-1 at 2 (Request for Hr'g to Contest Fee Rev. Determination MF-608556); R.R. at 302a.

In 13 administrative decisions, the Fee Review Section determined that (1) no payment was due; (2) 2 codes were improperly billed (96365-intravenous infusion of up to 1 hour and 96366-add-on for each additional hour of infusion); and (3) the 00600 code (anesthesia) was not separately billable as it was an integral part of another procedure (96365). F.F. No. 9. Subsequently, Provider filed 13 requests for hearing pursuant to 34 Pa. Code § 127.257 challenging the decisions.

Following 5 *de novo* hearings, the hearing officer determined that codes 96365 and 96366 were "sequential parts [of] the same, single procedure, involving

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(5).

3

the same, single drug[.]" F.F. No. 24. He reasoned that because ketamine is an anesthetic, "it may not be billed both as an intravenous infusion and separately as an anesthetic, since the infusion *is of an anesthetic*[.]"[5] F.F. No. 28 (emphasis in original). In addition, finding that code 00600 encompassed anesthesia for procedures on the cervical spine and cord, he found that Provider provided no evidence of any procedures on those areas in these disputes. F.F. Nos. 26, 31, and 32.

Moreover, the hearing officer considered several decisions by workers' compensation judges (WCJs) that Provider submitted in support of its position that Insurer/TPA had to pay for Claimant's ketamine treatments in accordance with 34 Pa. Code § 127.125's provision that payments shall be based on 80% of the usual and customary charge for surgical procedures not included in the Medicare list of covered services. *See* Provider's Ex. P-1 (11/21/2019 WCJ DiLorenzo's Decision), Provider's Ex. P-2 (5/03/2021 WCJ Bowers' Decision), and Provider's Ex. P-3 (6/10/2021 WCJ Bowers' Decision); R.R. at 303a-43a. In particular, Provider focused on WCJ Bowers' June 2021 decision that Claimant met her burden on her penalty petition, that Provider was entitled to payment consistent with 34 Pa. Code § 127.125, and that Employer did not raise an issue that the submitted bills were for non-work-related treatment. 6/10/2021 WCJ Bowers' Decision, F.F. No. 13; R.R. at 341a.

---

[5] The hearing officer elaborated that "it defie[d] credulity to suggest a separate [d]istinct anesthetic was used to infuse the anesthetic ketamine" and that there was no evidence that there was any second, distinct anesthetic involved. F.F. No. 28. Accordingly, he rejected a 59 modifier for a distinct procedure service as applied to code 00600. *Id.*

Ultimately, the hearing officer determined that Insurer/TPA met its burden of proving that it properly reimbursed Provider but for the 4/15/2021 and 5/13/2021 dates of service, concluding as follows:

> There has not . . . been a justiciable issue presented in these 13 disputes. Examining the totality of the evidence . . . the Administrative De[cisions] issued as to these 13 Disputes bear no error. Notably, Insurer/TPA tendered payments despite the billing errors chronicled in the Administrative De[cisions]. As such, Insurer/TPA is estopped from declining to reimburse Provider for the 4/15/2021 [and] 5/13/2021 [d]ates of [s]ervice, consistent with the payments made as reflected in [Insurer/TPA's] Exhibits E-1 thru E-3 [R.R. at 201a-14a]. Otherwise, the Administrative De[cisions] should all be [a]ffirmed. Insurer/TPA is not ordered to render additional payments other than as to 4/15/2021 [and] 5/13/2021.

2/28/2022 Adjudication at 11-12. Provider's appeal to this Court followed.

## I.

The fee review process is limited to determining the "relatively simple matters" of the amount or timeliness of an insurer's payment for medical treatment. *Crozer Chester Med. Ctr. v. Bureau of Workers' Comp., Health Care Servs. Rev. Div.*, 22 A.3d 189, 198 (Pa. 2011). Section 306(f.1)(5) of the Act and the medical cost containment regulations (34 Pa. Code §§ 127.251-127.302) set forth the process for reviewing the amount or timeliness of the payment of medical expenses. Section 306(f.1)(5) of the Act provides:

> (5) The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this [A]ct shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness

5

or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the [Department of Labor and Industry] no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.

77 P.S. § 531(5).

The administrative decision, *de novo* hearing, and appeal procedures are found in 34 Pa. Code §§ 127.251-127.261. Only a provider may initiate an application for fee review. 34 Pa. Code § 127.251. Providers are permitted to challenge underpayments or denials of payments. An insurer's right to challenge is limited to contesting the administrative decision. In other words, notwithstanding an insurer's inability to initiate an application, "[a] provider or insurer shall have the right to contest an adverse administrative decision on an application for fee review." 34 Pa. Code § 127.257(a). Once a hearing officer is assigned a request for a hearing, he or she will schedule a *de novo* proceeding. 34 Pa. Code § 127.259(a). The ensuing hearing is limited to determining whether any payment is due from an insurer.[6] "The hearing will be conducted in a manner to provide all parties the

---

[6] The fee review process presupposes that liability has been established, either through employer's voluntary acceptance or by a determination by a WCJ, and neither the Act nor the medical cost containment regulations provide authority for a reviewer to decide the issue of liability in a fee review proceeding or encompass any review of whether the treatment is reasonable and necessary. *Catholic Health Initiatives v. Health Fam. Chiropractic*, 720 A.2d 509 (Pa. Cmwlth. 1998). Here, there is no indication that the treatments at issue did not arise from Claimant's work injuries, nor that they were unnecessary.

opportunity to be heard." 34 Pa. Code § 127.259(b). "All relevant evidence of reasonably probative value may be received into evidence." *Id.* "The insurer shall have the burden of proving by a preponderance of the evidence that it properly reimbursed the provider." 34 Pa. Code § 127.259(f). Following the issuance of a written decision and order, "[a]ny party aggrieved by a fee review adjudication . . . may file an appeal to the Commonwealth Court within 30 days from mailing of the decision." 34 Pa. Code § 127.261.

## II.

On appeal, Provider first argues that the hearing officer disregarded the regulations for reimbursing ASCs for surgical procedures not included in the Medicare list of covered services by using a different standard for calculating the amount due. Provider notes that it administered ketamine infusions to Claimant and billed Insurer/TPA using three codes, none of which are included in the Medicare list of covered services.[7]

As Provider maintains, it is significant that none of the codes is included in the Medicare list of covered services because the pertinent regulation provides:

> Payments to providers of outpatient surgery in an ASC, shall be based on the ASC payment groups defined by [the Health Care Financing Administration (HCFA)],[8] and shall include the Medicare list of covered services and

---

[7] Provider also argues that the hearing officer erred in accepting the American Medical Association's (AMA) current procedural terminology (CPT) 2021 Professional Edition as authoritative for analyzing billing disputes because it is not referenced in the Act or regulations. However, we need not reach this issue.

[8] In 1977, the HCFA was created to combine under one administration the oversight of the Medicare program, the federal portion of the Medicaid program, and related quality assurance activities. The HCFA is now called the Centers for Medicare and Medicaid Services (CMS). *See* https://www.federalregister.gov/agencies/centers-for-medicare-medicaid-services (last visited April 11, 2025).

7

related classifications in these groups. This payment amount shall be multiplied by 113%. *For surgical procedures not included in the Medicare list of covered services, payments shall be based on 80% of the usual and customary charge.*

34 Pa. Code § 127.125 (footnote and emphasis added). "Usual and customary charge" within the meaning of the Act is defined as "[t]he charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 34 Pa. Code § 127.3.

In support of Insurer/TPA's position that it properly reimbursed Provider, it presented the testimony of two witnesses. The hearing examiner found both witnesses to be credible. F.F. No. 16.

Insurer/TPA's first witness was Fred Adorno, a business analyst for Conduit who was not involved in the claim denials but personally handled the fee disputes. Adorno "audits . . . medical bill records sent to him by examiners after payment has issued and [p]roviders have complained about the amount or about the lack of payment[.]" F.F. No. 14. He testified that Provider was an ASC[9] and that, as such, was subject to a separate fee schedule for payment under the Act, Schedule F. 10/04/2021 Hr'g, Notes of Testimony (N.T.) at 32-33; R.R. at 65a-66a. He

---

[9] An ambulatory surgical center, ASC, is defined as

> a center that operates exclusively for the purpose of furnishing outpatient surgical services to patients. These facilities are referred to by HCFA as ASCs and by the Department of Health as ASFs [ambulatory surgery facilities]. For consistency with the application of Medicare regulations, these facilities are referred to in this chapter as ASCs.

34 Pa. Code § 127.3.

testified that an independent non-profit corporation called Fair Health accumulates data on charges for medical procedures, with each procedure code divided into modules based on type of facility and geographical areas. It charts the data into percentiles, and the Pennsylvania Department of Labor and Industry utilizes the 85th percentile computed by Fair Health as the benchmark to determine the usual and customary rate. 34 Pa. Code § 127.256. Where Fair Health does not have enough data to provide a benchmark, 80% of the billed amount is allowed. Thus, in accordance with 34 Pa. Code §§ 127.125 and 127.3, he stated that (1) codes 96365 and 96366 were reimbursable at 80% of the 85th percentile of charges based on data from Fair Health;[10] and (2) code 00600 was reimbursable at 80% of the total billed because of the lack of any usual and customary data from Fair Health. N.T. at 23 and 29-30; R.R. at 56a, 62a-63a. In summary, Adorno testified that (1) he had no information as to why the claims were listed as disputed for the dates at issue; (2) he agreed that the services provided were the same as were provided on earlier service dates; and (3) Provider properly submitted its bills with medical documentation and Labor and Industry Bureau Code (LIBC) forms. N.T. at 26-27 and 46-47; R.R. at 59a-60a, 79a-80a.

---

[10] Fair Health compiles data on charges for medical procedures. As the hearing officer found: "Fair Health is an independent, not-for-profit [corporation] created out of settlement based upon [the] 2009 investigation into reimbursement practices of various insurers[.]" F.F. No. 15. Its mission includes maintaining "(1) [an] independent database of health care claims data; (2) [a] website free to consumers to help understand health care pricing; [and] (3) [a] research platform for government agencies, academic institutions and other interested stakeholders[.]" *Id*. "Fair Health collects over 60 insurers' data plus TPA data; it has 34 billion claim lines in its database generally, with 100 million claim lines in its dataset specific to [Pennsylvania.]" *Id*. It "organizes data into modules/procedure codes/geo-modifier[s] and if applicable geo-zip[s.]" *Id*. "Geo-zips are a proprietary Fair Health aggregation of geographies[,] . . . roughly align[ing] with the first three digits of a ZIP code." N.T. at 53; R.R. at 86a. "The procedure codes in its database are CPT codes set by the AMA; it breaks down (charges) into percentiles, from 5th percentile to 95% percentile[.]" F.F. No. 15.

Insurer/TSA's second witness was Alexander Mizenko, the manager of product and data analytics for Fair Health. In response to a request from Conduit, Mizenko created a visual representation of data (histogram) with respect to the current procedural terminology (CPT) codes of 96365 and 96366. The hearing officer found, regarding the histograms, that the "visual depictions of the distribution of data for a particular CPT code in specific geographic region, providing the 80% of the 85th percentile for the CPT code":

> Per the [April] 2020 histogram, the 85th percentile for 96365 was $1136.16, and the said percentile for 96366 was $644.91;
>
> Per the [October] 2020 histogram, [the] 85th percentile for 96365 was $118.95, and for 96366 was $645.76[.]

F.F. No. 15. Notably, Mizenko acknowledged that Fair Health provided data to Insurer/TPA from the module for an *outpatient facility and not from the module for an ASC,* and that was the basis of the histograms. N.T. at 66-68; R.R. at 99a-101a. In fact, Mizenko stated that he was asked to provide information only for outpatient facilities and not for ASCs. N.T. at 69; R.R. at 102a.

Accordingly we conclude that the hearing officer's determination was erroneous. Both witnesses acknowledged that Provider was an ASC subject to Schedule F. Mizenko based his testimony on the inapplicable outpatient clinic module rather than the correct ASC module, which was used by the hearing officer in his determination. In other words, the hearing officer used the proper formula for determining the allowable amount, but applied that formula to the wrong data.

Consequently, the hearing officer erred in determining that Insurer/TPA satisfied its burden of proof.[11]

Accordingly, we reverse the adjudication and remand this matter to the Bureau with directions to order Insurer/TPA to reimburse Provider as an ASC for the charges at issue in accordance with 34 Pa. Code § 127.125, plus statutory interest.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[11] In light of our disposition, we need not address Provider's claims that the hearing officer shifted the burden of proof to Provider or that the doctrine of *res judicata* applies here.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fort Washington Surgery Center,    :
                   Petitioner    :
                                  :
                v.                   :   No. 271 C.D. 2022
                                  :
Indemnity Insurance Company of    :
North America and ESIS, Inc. (Bureau  :
of Workers' Compensation Fee Review  :
Hearing Office),                    :
                 Respondents   :

# O R D E R

AND NOW, this 14th day of April, 2025, the adjudication of the Bureau of Workers' Compensation, Fee Review Hearing Office, is hereby REVERSED. This matter is REMANDED to the Bureau with directions to order Indemnity Insurance Company of North America and ESIS, Inc., to reimburse Fort Washington Surgery Center as an ambulatory surgical center for the charges submitted in accordance with 34 Pa. Code § 127.125, plus statutory interest.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita